IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MAX FERGUSON II,

        Plaintiff,

vs.                           Case No. 16-1348-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On March 25, 2016, administrative law judge (ALJ) James Harty issued his decision (R. at 16-29). Plaintiff alleges that he has been disabled since July 10, 2013 (R. at 16). Plaintiff is insured for disability insurance benefits through December

31, 2018 (R. at 18). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 18). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 18). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19). After determining plaintiff's RFC (R. at 20-21), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 27). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 28-29). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 29).

**III. Does substantial evidence support the ALJ's determination at step five that plaintiff can perform other work in the national economy?**

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Included in his RFC findings, the ALJ found that plaintiff can perform a range of medium work, and more specifically, can stand and/or walk for 6 hours in an 8-hour workday (R. at 20-

5

21). In making this finding, the ALJ adopted the exertional limitations of Dr. Coleman and Dr. Braverman, who both opined that plaintiff could stand and/or walk for "about 6 hours in an 8-hour workday" (R. at 88-90, 101-103, 26).[2]

At the hearing, after being provided with the ALJ's RFC findings, including a finding that plaintiff could stand for six hours out of eight (R. at 59), the vocational expert (VE) testified that plaintiff could perform the jobs of hand packager, linen room attendant and a dining room attendant (R. at 60). Based on this testimony, the ALJ concluded that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 28-29).

During the hearing, the VE was asked by plaintiff's counsel about the above 3 jobs identified:

> Q (by attorney): On these three medium positions, are these positions where they are either standing or walking the full eight hours, or is there so roughly 2 hours w[h]ere they can sit?
>
> A (by VE): The linen remittance[3] does have opportunities to sitting. The other two jobs are standing and walking [INAUDIBLE].
>
> Q: When you say the living room attendant[4] would have some time for sitting, how much time, typically?

---

[2] According to Social Security Ruling 83-10, a full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. In most medium jobs, being on one's feet for most of the workday is critical. SSR 83-10, 1983 WL 31251 at *6.
[3] Presumably, linen remittance is a reference to the linen room attendant position previously identified.
[4] Presumably, living room attendant is also a transcription error which was in fact a reference to the linen room attendant position previously identified.

6

> A: That can vary from employer to employer.
> I'm not sure if I can break it - bring it
> down any further than that other than there
> are opportunities for brief positional
> change, but it is going to require a lot of
> being on the feet.
>
> Q: I guess just clarify, would it be -
> would they have the full two hours?
>
> A: I don't believe it would be a full two
> hours for that job.

(R. at 60-61).

"RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184 at *1. The ALJ indicated in his decision that plaintiff can stand and/or walk for "6 hours in an 8-hour workday" (R. at 21). At the hearing, the ALJ indicated in the hypothetical question to the VE that plaintiff could "stand six hours out of eight" (R. at 59).

The VE identified three jobs, hand packager, linen room attendant, and dining room attendant, as jobs that plaintiff could perform given the RFC limitations posed by the ALJ (R. at 59-60). The ALJ relied on that testimony to find that plaintiff could perform jobs that exist in significant numbers in the national economy, and therefore was not disabled (R. at 28-29).

However, at the hearing, the VE testified that the jobs of hand packager and dining room attendant involve only standing and walking. On the other hand, the job of linen room attendant

7

has opportunities for sitting.  When asked how much time the job of linen room attendant would have for sitting, the VE testified that he did not believe that it would be the full two hours for that job (R. at 60-61).

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  The RFC findings of the ALJ is not the least an individual can do despite his or her limitations or restrictions, but the most.  According to the ALJ, plaintiff can stand and/or walk for 6 hours in an 8-hour workday.  However, the VE clearly testified that the jobs of hand packager and dining room attendant require standing and walking, and only the job of linen room attendant has an opportunity for sitting.  The VE further testified that she did not believe that it would be a full two hours of sitting for the job of linen room attendant.  Therefore, based on the ALJ's RFC finding that plaintiff can only stand and/or walk for 6 hours in an 8-hour workday, the testimony of the VE that two of the identified jobs require standing and walking, while the third identified job allows for sitting for less than 2 hours in an 8-hour workday, and the lack of any evidence that plaintiff can perform any other jobs in the national economy, the court finds that substantial evidence does not support the ALJ's determination that other jobs exist in

significant numbers in the national economy that plaintiff can perform.

Defendant argues that, even accepting plaintiff's argument that the ALJ did not sufficiently explain his reliance on the jobs of hand packager and dining room attendant in light of the VE's testimony that these occupations would require near constant standing and walking, substantial evidence still supports the ALJ's reliance on the VE testimony with respect to the linen room attendant position.  Defendant notes that the VE testified that the time for sitting on this job would vary from employer to employer and would probably not entail two full hours of sitting (Doc. 12 at 5-6).  Both Dr. Coleman and Dr. Braverman indicated that plaintiff could stand and/or walk for "about" 6 hours in an 8-hour workday (R. at 88, 101).  A full range of medium work requires standing and/or walking, off and on, for a total of "approximately" 6 hours in an 8-hour workday. SSR 83-10, 1983 WLL 31251 at *6.

First, SSR 96-8p makes clear that the RFC is not the least an individual can do despite his or her limitations or restrictions, but the most.  The VE testimony is clear that none of the three jobs she identified require no more than 6 hours of standing and/or walking in an 8-hour workday.  There is no evidence in the record that plaintiff, with all of the

9

limitations set out in the ALJ's RFC findings, can perform the three jobs identified by the ALJ, or any other medium work.

Second, even if the court were to find that a reasonable factfinder could conclude that plaintiff could perform the job of linen room attendant, which allows for somewhat less than 2 hours for sitting, the VE testimony is that 30,000 such jobs exist in the national economy. Defendant argues that this represents a significant number of jobs in the national economy.

The statute and case law are clear that the Commissioner must show that the claimant can perform other kinds of work that exists in significant numbers in the national economy. See Raymond v. Astrue, 621 F. 3d 1269, 1274 (10th Cir. 2009). The proper focus generally must be on jobs in the national, not regional, economy. The Commissioner is not required to show that job opportunities exist within the local area. Raymond v. Astrue, 621 F.3d at 1274. The question for the court is whether, on the facts of this case, the ALJ's error regarding the number of jobs that plaintiff can perform given the RFC limitations established by the ALJ constitutes harmless error.

Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance

10

where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way. Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

In Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992), the court refused to draw a bright line establishing the number of jobs necessary to constitute a "significant number." The court set out several factors that go into the proper evaluation of what constitutes a significant number, including the level of a claimant's disability, the reliability of the VE testimony, the distance claimant is capable of travelling to engage in the assigned work, the isolated nature of the jobs, and the types and availability of such work. Id. Judicial line-drawing in this context is inappropriate, and the determination of a numerical significance entails many fact-specific considerations requiring individualized evaluation. Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004). The decision should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation. Allen, 357 F.3d at 1144; Trimiar, 966 F.2d at 1330.

In Trimiar, the court found that the ALJ gave proper consideration to the factors that go into the evaluation of what constitutes a significant number, and upheld the ALJ's decision that 650-900 jobs in the state of Oklahoma constitutes a significant number of jobs. 966 F.2d at 1330-1332. By contrast, in Allen, the ALJ had found that plaintiff could perform 3 jobs that exist in significant numbers. However, the VE had testified that claimant could only perform 1 of those jobs (surveillance systems monitor) given the RFC limitations set forth by the ALJ. There were only 100 surveillance systems monitor jobs in the state. Id. at 1143-1144. In light of the ALJ's failure to consider whether 100 jobs constituted a significant number in connection with the Trimiar factors, the court declined to find harmless error, stating that it would be an improper exercise of judicial factfinding rather than a proper application of harmless-error principles. The court held that it is the ALJ's primary responsibility to determine what constitutes a significant number of jobs in light of the various case-specific considerations outlined in Trimiar. Allen, 357 F.3d at 1145.

In Stokes v. Astrue, 274 Fed. Appx. 675, 683-684 (10th Cir. April 18, 2008), the court found that plaintiff could only perform 2 of the 4 jobs identified by the ALJ. The court noted that 11,000 of those 2 jobs existed regionally, and 152,000 of

12

those 2 jobs existed nationally. The court found that no reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region in which the claimant lived or nationally.

In Chrismon v. Colvin, 531 Fed. Appx. 893, 899-900 (10th Cir. Aug. 21, 2013), the ALJ had failed to include in his hypothetical question a limitation to simple, repetitive tasks. Only 2 of the 4 jobs identified by the VE were consistent with this limitation. Regionally, 17,500 of those 2 jobs existed, and nationally 212,000 of those 2 jobs existed. On these facts, the court held that any error in failing include a limitation to simple, repetitive tasks was harmless error.

In Shockley v. Colvin, 564 Fed. Appx. 935, 940-941 (10th Cir. April 29, 2014), only 2 of the 4 jobs identified by the VE and the ALJ were consistent with the claimant's limitations. Regionally, 17,000 of those 2 jobs existed, and 215,000 of those 2 jobs existed nationally. On these facts, the court found that the inclusion of other jobs by the ALJ was harmless error. See also Bainbridge v. Colvin, ___ Fed. Appx. ___, 2015 WL 4081204 (10th Cir. July 7, 2015 at *6)(harmless error when remaining jobs totaled 20,000 jobs in the state and 500,000 nationally); Anderson v. Colvin, 514 Fed. Appx. 756, 764 (10th Cir. April 4, 2013)(harmless error when remaining jobs totaled 5,900 in the state and 650,000 nationally); Johnson v. Barnhart, 402 F.

Supp.2d 1280, 1284-1285 (D. Kan. 2005)(the range of remaining jobs which plaintiff can perform is from 3,040 in the state and 212,000 nationally; court held this was sufficient to show that work exists in significant numbers).

However, in Chavez v. Barnhart, 126 Fed. Appx. 434, 436-437 (10th Cir. Feb. 3, 2005), the ALJ had found that plaintiff could perform 3 jobs; however, only 1 job was properly identified as suitable for the claimant. The VE testified that there were 49,957 of these jobs nationally, and only 199 in the region. The court, noting that the number of jobs available in the region is relatively small, declined the invitation to find harmless error on the ground that the number of jobs is significant as a matter of law, and remanded the case for a determination of whether the number of jobs is sufficient to qualify as significant.

In Vyskocil v. Astrue, Case No. 11-1135-JWL, 2012 WL 2370200 at *3 (D. Kan. June 22, 2012), the court held that the ALJ erred by failing to consider the opinion of Dr. Goering, who had opined that plaintiff was limited to occasional fingering. With this limitation, only one job would remain available; 450 of those jobs were available in Kansas and 55,000 in the national economy. The court noted that the ALJ had not made a determination of whether this number of jobs constituted a significant number of jobs. The court, after citing to Trimiar,

Allen, Raymond and Chavez, remanded the case in order for the ALJ to explain the weight to be accorded to Dr. Goering's opinion, and if he accepted the limitation, to determine if there are a significant number of jobs available in the economy to a person with such a limitation.

In Brillhart v. Colvin, Case No. 14-1387-JWL, 2015 WL 7017439 at *5 (D. Kan. Nov. 10, 2015), the court held that it could not hold as a matter of law that the 39,000 jobs remaining nationally was significant as a matter of law. The court was unwilling to find that no reasonable fact-finder could find that there are not a significant number of jobs available to plaintiff. See also Ladenburger v. Colvin, 2017 WL 1352274 at *2-5 (D. Colo. April 13, 2017)(court held that no case law comes close to finding that 44,000 jobs is a significant number of jobs as a matter of law; case remanded for ALJ to make findings required by Trimiar); Evans v. Colvin, 2014 WL 3860653 at *4-5 (D. Colo. Aug. 6, 2014)(remaining jobs totaled 272 in the region and 18,000 nationally; court, citing to Chavez, and ALJ's failure to discuss Trimiar factors, held that it could not rule as a matter of law that 18,000 jobs is so significant that no reasonable factfinder could reach the opposite conclusion; the court noted that while it would not be surprised if the ALJ determined that 18,000 jobs is sufficient, that decision is for the ALJ to make, not the court).

In summary, the 10th Circuit has not drawn a bright line establishing the number of jobs necessary to constitute a significant number of jobs. In general, that determination should be made by the ALJ after considering a number of factors, and weighing the statutory language as applied to a particular claimant's factual situation. However, in a number of cases, the 10th Circuit determined that the ALJ committed harmless error because the court found that when the remaining number of jobs regionally range from 11,000 to 17,500 and nationally range from 152,000 to 215,000 (Stokes, Chrismon, and Shockley), no reasonable factfinder could have determined that a suitable number of jobs do not exist in significant numbers.

On the other hand, in Chavez, the 10th Circuit determined that when the remaining number of jobs was 199 in the region and 49,957 nationally, the court declined to find harmless error and remanded the case in order for the ALJ to make a determination of whether the remaining number of jobs was sufficient to qualify as a significant number of jobs. In Vyskocil, Judge Lungstrum held that when the remaining number of jobs was 450 in the state and 55,000 in the national economy, the court declined to find harmless error and remanded the case. In Brillhart, Judge Lungstrum held that when the remaining number of jobs was 39,000 in the national economy, the court declined to find harmless error and remanded the case. In Evans, the court held

that when 18,000 jobs remained nationally, it was for the ALJ to decide if a significant number of jobs remained; and in Ladenburger, the court held that when 44,000 jobs remained nationally, it was for the ALJ to decide if a significant number of jobs remained..

In the case before the court, the remaining number of jobs is 30,000 nationally. Thus, the remaining number of jobs is lower than in Chavez (49,957), Vyskocil (55,000), Ladenburger (44,000) and Brillhart (39,000), all cases in which the courts declined to find harmless error on the grounds that the remaining number of jobs nationally is significant as a matter of law, and remanded the case for a determination of whether the number of jobs is sufficient to qualify as significant. Based on the facts of this case, and the guidance provided by the cases cited above, the court declines to find harmless error on the ground that the remaining number of jobs is significant as a matter of law.[5]

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four

---

[5] Defendant cites to the case of Rogers v. Astrue, 312 Fed. Appx. 138, 141-142 (10th Cir. Feb. 17, 2009), which found that 11,000 sedentary jobs which existed could be relied on by the ALJ as substantial evidence to support her determination of nondisability. However, the 10th Circuit subsequently noted that the district court below held that the number in Rogers was stated in dictum and harmless error was not at issue in the case. Evans v. Colvin, 640 Fed. Appx. 731, 735 (10th Cir. Jan. 29, 2016); see Ladenburger, 2017 WL 1352274 at *3 (whether such a number was significant was clearly not an aspect of the Circuit's analysis). See also Brillhart, 2015 WL 7017439 at *6 (distinguishing Rogers, noting that the decision was not absolutely clear, and finding that the record evidence will support an ALJ's decision is a far cry from weighing the evidence in the first instance and determining whether a significant number of jobs are available in the economy to meet the needs of a particular situation). It is clear from Rogers that the court in that case did not address the issue of harmless error. For these reasons, the court declines to find Rogers persuasive.

of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 12th day of June 2017, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge